UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| GLOBAL DATA SYSTEMS, INC. | CIVIL ACTION NO. 6:16-cv-01509 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| WORLD HEALTH INDUSTRIES, INC. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

This matter comes before the court by consent of the parties pursuant to 28 U.S.C. § 636. Global Data Systems, Inc. contends that it is entitled to be paid for services rendered to World Health Industries, Inc., together with a penalty for early termination of its contract with World Health, attorneys' fees, and costs. Global Data filed a motion for partial summary judgment (Rec. Doc. 39), in which it seeks judgment as a matter of law on four specific issues. World Health opposed the motion on every issue. (Rec. Doc. 48). Oral argument was held on February 22, 2018. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

## Background

At some point in 2014, representatives of Global Data traveled to Jackson, Mississippi to meet with Jerome Beasley and others with regard to the possibility of providing telecommunications services to a potential client. An agreement was reached, and services and equipment were provided. Following the early termination

of the business relationship, however, a dispute arose concerning the amount owed by the client to Global Data. This lawsuit arose out of that dispute.

In this lawsuit, Global Data seeks to recover sums it claims are owed to it by World Health pursuant to their alleged contractual relationship. Global Data claims that it agreed to provide World Health with equipment and services for the purpose of improving World Health's telecommunication services with related pharmacies. Global Data contends that a contract was created, through offer and acceptance, when it sent proposals to World Health that were accepted by World Health's representative, Jerome Beasley. Global Data claims that World Health failed to pay approximately $75,000 that was owed under the contract and further contends that it is also entitled to recover a fee of approximately $340,000 for World Health's alleged early termination of the contract. Each of the proposals that was accepted by Mr. Beasley indicated that it was subject to certain terms and conditions located on Global Data's website. Those terms and conditions allegedly include an early termination charge.

World Health contends, to the contrary, that it does not owe any sum to Global Data because any contract Global Data might have entered into was with a wholly separate company called Rx Pro Compounding & Pharmacy, Inc., because Mr. Beasley had no authority to bind World Health, because no contract was entered into

by World Health, and because the early termination fee and the other terms and conditions referenced on Global Data's proposals were not retrievable from the internet address listed on the proposals.

## Analysis

### A. The Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3] If the moving party

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

**B.**  **Louisiana Law Applies**

A federal court sitting in diversity must apply state substantive law and federal procedural law.[8] Because this is a diversity case, Louisiana's substantive law must be applied.[9] To determine Louisiana law, federal courts look to the final decisions

---

[4] *Washburn v. Harvey*, 504 F.3d at 508.

[5] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8] *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

[9] See, e.g., *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

of the Louisiana Supreme Court.[10] When the state's highest court has not decided an issue, the court must make an "*Erie* guess" as to how the state supreme court would decide the issue.[11] In making such a guess, the federal court may rely upon state appellate court decisions, unless persuasive data convinces the court that the state supreme court would decide the issue differently.[12] When making an *Erie* guess concerning Louisiana law, the Fifth Circuit relies upon "(1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries."[13]

---

[10] *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d at 269.

[11] *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013); *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d at 269.

[12] *Guilbeau v. Hess Corporation*, 854 F.3d 310, 311-12 (5th Cir. 2017); *Temple v. McCall*, 720 F.3d at 307; *Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008).

[13] *Gulf and Mississippi River Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488–89 (5th Cir. 2013) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010) (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006))).

Accordingly, Louisiana law must be applied in deciding some of the issues currently before the court, including whether Global Data and World Health entered into a binding contract and whether Jerome Beasley had authority to contract on behalf of World Health.

**C.      Was the Proper Defendant Named?**

Global Data contends that it entered into a contract with World Health. World Health takes the position, however, that it did not contact with Global Data, pointing out that there is no quote or proposal in the record mentioning World Health.

In support of its motion, Global Data submitted eight proposals or quotes for services and equipment, dated between July 25, 2014 and October 21, 2014. All of them expressly state that they were prepared for Jerome Beasley, and Mr. Beasley signed each of the proposals. On each of the proposals, Mr. Beasley initialed a sentence stating that the "Customer representative represents that he is authorized to accept the quote. . . ." The earliest proposal identified Mr. Beasley as being affiliated with "Rx Pro Compounding & Pharmacy, Inc." All of the others identified Mr. Beasley as being affiliated with "Rx Pro Pharmacy." E-mail correspondence from Mr. Beasley dated November 3, 2014 – a date later than the dates of all of the proposals – and submitted in opposition to Global Data's motion, indicated that Mr. Beasley was the customer care manager for "Rx Pro Compounding & Pharmacy, Inc."

In support of its motion, Global Data also submitted an unsigned new customer credit application that was allegedly filled out by World Health at the commencement of its relationship with Global Data. This form has a signature block for an "authorized signer" – identified as Jerome Beasley – and indicates that the company name is "Rx Pro Pharmacy." However, deposition testimony established that the federal identification number and state tax number on the form were those of World Health. The credit application lists a primary contact – Mr. Beasley – and a secondary contact – Theresa Jones. Their telephone numbers are the same, with different extensions. However, the suffix on Mr. Beasley's e-mail address is "rxpro.net" while the suffix on Ms. Jones's e-mail address is "worldhealthind.com."

Mr. Beasley testified in deposition as a corporate representative of World Health, but when asked if he was ever an employee of World Health, he stated that he was a direct employee of "Rx Pro." Robert Durham was also designated as World Health's corporate representative at the company's deposition. He testified that World Health did business as Rx Pro, but he stated that he did not know if Rx Pro and World Health were one and the same. Theresa Jones, a former employee of World Health, was also deposed. Although she stated that she did not know the ownership status of each individual company, and only had "somewhat" of an understanding of World Health's structure, she testified that World Health was a management

company. Cindy Rocray, World Health's controller, also testified that World Health was a management company, and she additionally stated that the compounding pharmacy at the same location as World Health's corporate offices was operated as a "d/b/a" of World Health. More particularly, she testified that World Health and Rx Pro Pharmacy were not separate companies because the single company was World Health Industries d/b/a (doing business as) Rx Pro Pharmacy. It is unclear, however, whether her testimony in that regard is limited to the pharmacy located at World Health's offices in Jackson, Mississippi or was meant to pertain to every Rx Pro Pharmacy referenced in the proposals.

Notably, neither party submitted any documents from any state's secretary of state's office providing information concerning the corporate structure of World Health Industries, Inc., Rx Pro Compounding & Pharmacy, Rx Pro, or Rx Pro Pharmacy. Further, the Court was informed Rx Pro Compounding & Pharmacy, Inc. is currently in bankruptcy. At oral argument, both sides indicated the debt that is the subject matter of this litigation is not at issue in the bankruptcy and Global Data is not listed as a creditor.

Based on the record currently before the Court, and guided by the principle that all inferences must be construed in the light most favorable to the nonmoving party, this Court concludes that there is a genuinely disputed issue of material fact

concerning whether Global Data did business with World Health Industries, Inc., Rx Pro Compounding & Pharmacy, Rx Pro, or Rx Pro Pharmacy. While the deposition testimony of Mr. Durham and Ms. Rocray is compelling, it is not sufficient at this stage of the litigation to resolve this critical factual issue. Accordingly, this Court finds that this important factual dispute precludes summary judgment in Global Data's favor and requires that the pending motion be denied.

**D.     Did Global Data and World Health Enter Into a Contract?**

Global Data contends that, through offer and acceptance, i.e., the submission of a quote or proposal to World Health and the affixing of a World Health representative's signature to the quote or proposal, a binding contract was formed.

Under Louisiana law, a contract is formed by the consent of the parties established through offer and acceptance.[14] A quote or proposal could certainly be interpreted as an offer, and the signature of the party to whom the quote or proposal was submitted could certainly constitute acceptance of the offer. Therefore, while the Court is inclined to find that a contract was created when Mr. Beasley signed the proposals, resolution of this issue will be pretermitted, pending resolution of the factual issues that preclude summary judgment in Global Data's favor.

**D.     Did Jerome Beasley have Authority to Bind World Health?**

---

[14]     La. C.C. art. 1927.

Global Data contends that a binding contract was entered into when Mr. Beasley signed Global Data's proposals, indicating that the proposals were accepted. Under Louisiana law, a principal is bound by the authorized acts of his agent and also bound by the acts of a professed agent acting with apparent authority.[15]

It is undisputed that Mr. Beasley signed each of the proposals. Indeed, Mr. Beasley confirmed in his deposition testimony that he initialed each page of each proposal and signed each of them at the end. The last sentence on each proposal said: "Customer representative represents that he is authorized to accept the quote . . . ." Mr. Beasley also testified that he believed he was authorized to bind the company by signing the proposals because he had been told to handle the company's interaction with Global Data. However, his authority came from Chad Barrett, the CEO of Rx Pro Pharmacy and Compounding, Inc., and there is no evidence in the record indicating that he was authorized by World Health to act on its behalf. The face of the proposals documents indicates that Mr. Beasley acted as a company representative in signing the proposals. The deposition testimony supports the conclusion that he was authorized to accept Global Data's proposals and that he held himself out to Global Data as someone with authority to accept the proposals, clothing himself with apparent authority. However, as noted above, Global Data has not yet established

---

[15] La. C.C. art. 3021; *Tedesco v. Gentry Development, Inc.*, 540 So.2d 960, 963 (La. 1989).

which company Mr. Beasley was acting for when he signed the proposals. Therefore, this Court cannot, at this time, determine whether Mr. Beasley was authorized to act on behalf of World Health when he signed the proposals. For that reason, Global Data is not entitled to summary judgment in its favor with regard to this issue.

E. **Were the Terms and Conditions on Global Data's Website Incorporated in the Contract?**

Each of the proposals is for a thirty-six-month period, and each of them was scheduled to commence in 2014 and terminate in 2017. In the petition, however, Global Data alleged that World Health terminated the alleged contract on March 29, 2016. Global Data contends that this triggered an early termination charge that was incorporated in the contract by reference to terms and conditions set forth on Global Data's website. Each of Global Data's proposals said: "Customer representative represents that he or she is authorized to accept quote on Customers [sic] behalf subject to the terms and conditions posted on Global's web site at: http://www.getgds.com/gdstscs.cfm." Global Data contends that, at the time when the proposals were sent to Mr. Beasley and signed by him, the terms and conditions were accessible at the stated internet address. The deposition testimony of World Health's representatives established that none of them, including but not limited to Mr. Beasley, actually attempted to view, read, or print out the terms and conditions

-11-

at the time that the proposals were signed by Mr. Beasley. However, when Mr. Beasley attempted at a later date to access the terms and conditions, he was not able to find them at the cited internet address. Indeed, it is undisputed that the cyberspace location of the terms and conditions was changed by Global Data at some point in time. World Health therefore argues that because the terms and conditions could not be found at the cited internet address, they could not be incorporated in any alleged contract. Although an attempt was made to establish at which internet address the terms and conditions could be found at various times, particularly through the use of a website called "the Wayback Machine," the parties continued to dispute, at oral argument, the dates on which the terms and conditions were transferred from one place to another on the internet. This Court finds that this is a genuine issue of material fact that precludes summary judgment in Global Data's favor on the record as it currently exists.

World Health also argued that it takes something more than simply the words "subject to" to incorporate a provision in a contract by reference. This Court pretermits discussion of that issue of contract law at this time.

## Conclusion

As explained above, Global Data has not carried its burden of establishing that there are no genuine issues of material fact before the court and that it is entitled to

summary judgment in its favor. Accordingly, Global Data's motion for partial summary judgment (Rec. Doc. 39) is DENIED.

Signed at Lafayette, Louisiana, on February 28, 2018.

                                                    PATRICK J. HANNA
                                                    UNITED STATES MAGISTRATE JUDGE